**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CF ENTERTAINMENT, INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　-against-<br><br>UNIVISION COMMUNICATIONS, INC., a Delaware corporation; FORGELIGHT, LLC, a Delaware limited liability company; SEARCHLIGHT CAPITAL PARTNERS, L.P., a Delaware limited partnership; WADE DAVIS, an individual; DANIEL ALEGRE, an individual; ERIC ZINTERHOFER, an individual; and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants. | CASE NO.: _____<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff CF Entertainment, Inc. ("Plaintiff") alleges as follows:

## INTRODUCTION

1.　　For years, employers have been on notice that they cannot solicit employees who are under fixed term employment contracts and that poaching of them is unlawful.  Yet, that is precisely what Defendants did here.

2.　　Defendant Univision, by and through its senior-level officers and directors (including Defendant Alegre), Defendant ForgeLight, by and through its senior-level officers and directors (including Defendant Davis), and Defendant Searchlight, by and through its senior-level officers and directors (including Defendant Zinterhofer), deliberately solicited Plaintiff's Chief Revenue Officer of Advertising Sales, John Kozack ("Kozack"), in order to employ him in time for the crucial Advertising Upfronts for which Plaintiff had been itself preparing with Kozack.

809609.2

1

3.      As explained below, these Upfronts are the critical time each year when media advertising time is sold to advertisers.  Univision poached Plaintiff's number one advertising sales executive at the very worst, and most critical and debilitating time, for ad sales.

4.      Defendants did so in brazen disregard of a valid, fixed-term, written employment contract that they knew existed and was being performed by both Plaintiff and Kozack.  In fact, Kozack admitted that he gave Univision a copy of the contract (in violation of the contract's confidentiality provision) and that Univision induced Kozack to breach his contract by offering to pay him significantly more than the salary he is currently being paid by Plaintiff.  Thus, this action is about a contract that the Defendants intentionally and maliciously interfered with, for their own self-serving gain, during the most important time of year for Plaintiff's business.

5.      Plaintiff is part of Allen Media Group ("AMG"), a global media company with assets in film, cable and broadcast television (such as The Weather Channel, among others) and digital and streaming media, that serves nearly 300 million subscribers.  AMG is reliant upon advertising sales across every segment of its business, .

6.      Plaintiff and Kozack entered into an employment contract under which Kozack began working as the Chief Revenue Officer of Advertising Sales for Plaintiff effective January 5, 2026, to spearhead the strategy and lead Plaintiff's worldwide sales staff across all advertising, sales, brand sponsorships and revenue partnerships, for Plaintiff's entire portfolio of networks, sports, streaming, digital, social and branded content.  By this contract, Kozack became Plaintiff's top ad sales executive, and one of the key executives in the entire company.

7.      Plaintiff hired Kozack because of his unique and special relationships in the industry.  Kozack came to Plaintiff with over two decades of industry experience, most recently with Univision where he worked for 22 years and led a sales team generating approximately $1.7

billion per year in ad sales.  He left Univision at the end of 2025 after he was passed over, repeatedly, for promotions.  Plaintiff honored Kozack's then-existing employment contract with Univision and allowed him to start with Plaintiff after that contract expired at the end of 2025.

8.      Quickly, Plaintiff leveraged Kozack's unique industry relationships and experience to bring in substantial new advertising, sales and other revenues.  At the same time, Plaintiff worked hand-in-hand with Kozack to develop new and existing client relationships and made significant achievements towards other key milestones with Kozack playing a pivotal role.  In just the first three months, Kozack achieved a  $57 million commitment from an advertising agency with an $8 million advance.

9.      Because he was under a long-term, exclusive contract, Plaintiff included Kozack in strategic AMG initiatives and planning meetings where he received key competitive and confidential company information.

10.     On information and belief, without Kozack for the first quarter of 2026, Univision failed to reach its advertising targets and suffered a massive shortfall in expected advertising commitments.  With declining revenues and mounting debt burdens, Univision became more and more desperate, and ultimately decided that it needed to hire Kozack back even if it meant violating the law to do so.

11.     Univision knew that Kozack was bound by a multi-year employment contract with Plaintiff, which expressly provided that Kozack's services to Plaintiff were "of a special, unique, unusual, extraordinary, and intellectual character which gives them a peculiar value."  Despite seeing the contract and knowing the critical importance of Kozack to Plaintiff's business, Univision wrongfully and intentionally induced Kozack to leave Plaintiff and join Univision.

12.     The timing of this interference is devastating for Plaintiff.  The industry is in the

midst of the annual Upfronts—the single most critical revenue-generating period for Plaintiff's business each year.  Now is the time when Plaintiff and other media companies, like Univision, contract with blue-chip brands for their advertising commitments for the upcoming year.  Kozack was the quarterback of Plaintiff's sales team and leader of its efforts.

13.    Defendants induced Kozack to breach his employment contract, and Plaintiff is now left without its top sales executive as it works to close eight-figure advertising deals in a highly competitive marketplace.  There are very few people with Kozack's experience and relationships, and those few people are under contract with other media companies under fixed term agreements.  Plaintiff does not have, and cannot obtain, a readily available replacement for Kozack.

14.    Thus, by inducing Kozack to breach his contract with Plaintiff, Univision stole Plaintiff's key revenue generating executive and sabotaged Plaintiff's ability to secure the critical revenue commitments it needs at the most important time of the year.

15.    Univision's conduct is the very definition of tortious interference, done with full knowledge and reckless disregard for Plaintiff's contractual relations.  It is unlawful, unjustifiable and has caused immediate and irreparable harm to Plaintiff.  It would be unfair and inequitable to allow Univision to benefit from Kozack's services.

16.    Plaintiff signed a multi-year contract.  It takes the contract seriously and continues to uphold its end of the bargain with Kozack.  Thus, Plaintiff continued to pay Kozack his full salary, is holding his job open for him, and would welcome him back to the company.  Plaintiff worked harmoniously with Kozack for the months he worked there and should not have the benefits of its contract stolen away.

17.    When Kozack told Plaintiff that Univision solicited him to leave AMG and join

Univision, Kozack never once mentioned any issue that he had at AMG.  In fact, before he gave notice, Kozack praised AMG and recruited two sales executives to join him at AMG.  Kozack never mentioned any workplace issues until after Plaintiff sent a cease and desist to Univision before filing this lawsuit.

18.     This case is not about employee mobility or job movement.  It is about whether one party (Defendants herein) can knowingly interfere with the contract of another (Plaintiff herein) and illegally benefit from their wrongdoing.  Valid contracts, as here, are what drives commerce.  What good is a contract if it can be disrupted and destroyed in this manner?  The answer is obvious—Defendants should not benefit from their wrongdoing and should be enjoined from employing Kozack and held accountable for their wrongdoing.

## THE PARTIES

19.     Plaintiff CF Entertainment, Inc. is a California corporation with its principal place of business in Los Angeles County, California.  Plaintiff is a production, media, and film distribution company, and is part of the Allen Media Group ("AMG").

20.     Defendant Univision Communications, Inc. ("Univision") is a Delaware corporation with its principal place of business in Miami, Florida.  Univision is an international media company that competes directly with AMG for advertising revenue, talent and market share.  Univision has offices in New York, New York.

21.     Defendant ForgeLight, LLC ("ForgeLight") is a Delaware limited liability company with its principal place of business in New York, New York.  ForgeLight is a private equity company that invests in the media, financial technology, and consumer technology sectors, and is a major investor in Univision.  On information and belief, none of the members of ForgeLight are California citizens for purposes of personal jurisdiction.

22.     Defendant Searchlight Capital Partners, L.P. ("Searchlight") is a Delaware limited

partnership with its principal place of business in New York, New York.  Searchlight is a private equity company that invests in communications, media, financial services, and business services, and is a major investor in Univision.  On information and belief, none of the members of Searchlight are California citizens for purposes of personal jurisdiction.

23.    Defendant Wade Davis ("Davis") is an individual domiciled in the State of Florida. Davis is Vice Chairman of the Board of Directors of Univision and was directly involved in soliciting Kozack and inducing him to breach his employment agreement with Plaintiff. Davis is also the founder and CEO of ForgeLight.  He is also the former CEO of TelevisaUnivision, the parent company of Univision.

24.    Defendant Daniel Alegre ("Alegre") is an individual domiciled in the State of Texas.  Alegre is the Chief Executive Officer of Univision and was directly involved in soliciting Kozack and inducing him to breach his employment agreement with Plaintiff.

25.    Defendant Eric Zinterhofer ("Zinterhofer") is an individual domiciled in the State of New York.  Zinterhofer was directly involved in soliciting Kozack and inducing him to breach his employment agreement with Plaintiff.  Zinterhofer is the Founding Partner of Searchlight.  He serves on the Investment Committee, Operating Committee and Valuation Committee of Searchlight, and is jointly responsible for overseeing the Firm's activities with the two other Founding Partners.  Zinterhofer also serves on the Board of TelevisaUnivision, the parent company of Univision. Davis, Alegre and Zinterhofer are hereinafter referred to as the "Individual Defendants."

26.    Plaintiff is ignorant of the true names, capacities, relationships and extent of participation in the conduct herein alleged of the Defendants sued herein as DOES 1 through 10, inclusive, but on information and belief allege that said Defendants are legally responsible to it.

Plaintiff will amend this complaint to allege the true names and capacities of the Doe Defendants when ascertained.

**JURISDICTION AND VENUE**

27.     This Court has personal jurisdiction over Defendants because they purposefully directed their tortious conduct at the forum, including by, but not limited to, intentionally interfering with a contract of an employee who was working in New York for Plaintiff.  The exercise of personal jurisdiction comports with due process because Defendants have sufficient contacts with the forum and reasonably expect to be sued in this judicial district because, among other things, Univision maintains offices and employees in this district, is registered to do business in the State of New York, has designated a registered agent for service of process in New York, transacts substantial business in New York, derives a significant amount of its revenue from New York subscribers and customers, and has availed itself of the forum state's courts and other benefits, rights and privileges.   This Court also has general personal jurisdiction over ForgeLight and Searchlight as they are headquartered in this State, and the Court has general personal jurisdiction over Zinterhofer because he is a resident of this State.

28.     This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000.  There is complete diversity of citizenship between Plaintiff, on the one hand, and each of the Defendants, on the other hand.

29.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims herein occurred in this district, because the conduct causing injury to Plaintiff was undertaken in this judicial district where Kozack worked for Plaintiff, and because Defendants ForgeLight, Searchlight, and Zinterhofer are all residents of New York.

**FACTS**

A.    **Plaintiff and Allen Media Group**

30.    Chairman and CEO Byron Allen ("Allen") founded Plaintiff and the Allen Media Group ("AMG") in 1993.  Headquartered in Los Angeles, California, AMG has grown into one of the largest and most diversified media companies in the United States and is 100% African-American owned by Allen.

31.    AMG owns and operates 22 ABC-NBC-CBS-FOX network affiliate broadcast television stations in 22 U.S. markets and ten 24-hour HD television networks, including The Weather Channel, serving nearly 300 million subscribers.

32.    AMG produces, distributes and sells advertising for 74 television programs, making it one of the largest independent producers and distributors of first-run syndicated television programming for broadcast television stations.  AMG also produces over 500 hours of programming per year for the broadcast network, CBS.  With a library of over 5,000 hours of owned content across multiple genres, AMG provides video content to broadcast television stations, cable television networks, streaming services and multimedia digital platforms.  AMG's mission is to provide quality content to its viewers, global platforms, and Fortune 500 advertising partners.

33.    Recently, CBS announced that two shows produced by AMG will take over the CBS late-night schedule after "The Late Show with Stephen Colbert" ends its run on May 21.  AMG hired Kozack in part to sell ad time for these prominent and valuable timeslots.

34.    Plaintiff is a wholly-owned division of AMG and is the entity through which AMG, among other things, employs key executives responsible for driving advertising revenue across AMG's portfolio, including Kozack.

809609.2                                          8

**B.      Plaintiff Hires Kozack, A Uniquely Qualified, Irreplaceable Executive, To Be Its Chief Revenue Officer**

35.      Kozack is a senior-level advertising executive who has spent decades securing advertising revenue for leading media companies.

36.      Prior to joining Plaintiff, Kozack spent 22 years working for Defendant Univision, where he oversaw a team of national sales leaders responsible for cultivating client and agency partnerships, as well as advertising revenue for Univision's portfolio of linear networks, sports, streaming, digital, social and branded content.  Kozack has also worked as an Account Executive at FOX Cable Sports, and as Vice President/Group Supervisor with The Media Edge, an advertising agency.

37.      In these roles, Kozack developed crucial industry relationships, specialized skills and experience that Plaintiff understood would help drive value to the AMG family of companies.

**1.      Kozack's Employment Agreement**

38.      Plaintiff and Kozack entered into a written employment agreement (the "Agreement") with an initial term of two (2) years and five (5) optional one (1) year extensions for a total employment term of seven (7) years, commencing on January 5, 2026.

39.      In section 6 of the Agreement, Kozack expressly acknowledged that the services he furnished to Plaintiff were unique and irreplaceable—i.e. they were "of a special, unique, unusual, extraordinary, and intellectual character which gives them a peculiar value."

40.      Also in section 6, Kozack agreed to perform his duties "faithfully and to the best of Employee's ability and shall devote [his] full business efforts and time exclusively to [Plaintiff] and shall not engage in any outside business activities."  The Agreement also contains, in section 17, a New York choice-of-law clause.

41.    Kozack entered into the Agreement knowingly and voluntarily, with the benefit of counsel.  Plaintiff performed all obligations required of it under the Agreement and has at all times been ready, willing and able to continue performing its obligations thereunder.

42.    When Kozack started work for Plaintiff in New York, Plaintiff provided equipment, training and materials.  Kozack reported directly to Allen.

43.    Kozack fulfilled his job responsibilities by directly communicating with Mr. Allen and others through in person meetings in New York and through email, video conferences and telephone calls which Kozack directed to and from New York, where Kozack officed.

### 2.    Kozack's Unique, Irreplaceable Services For Plaintiff And AMG

44.    After being hired, Kozack immediately took on the key responsibilities of Chief Revenue Officer.  He was responsible for leading AMG's sales team while overseeing sales, brand sponsorships and revenue partnerships for the entire AMG portfolio, including the owned-and-operated ABC-NBC-CBS-FOX network affiliate broadcast television stations in 22 U.S. markets, AMG's programming block on CBS network, broadcast syndication, and the ten 24-hour AMG HD cable television networks.

45.    He was also responsible for overseeing advertising sales, brand sponsorships and revenue partnerships for AMG's digital streaming platforms, including HBCU GO, Sports.TV, TheGrio, The Weather Channel Streaming App, and Local Now.  And he recruited two ad sales executives to join him at AMG.

46.    Individuals with Kozack's unique combination of experience, industry relationships, and institutional knowledge are exceedingly rare and highly paid in the media industry.  Kozack's more than two decades of experience cultivating deep relationships with advertisers, agencies and brand partners gave him a singular ability, with Plaintiff's support, to

809609.2                                        10

drive advertising revenue across AMG's diverse media portfolio.  In just three months, Kozack achieved a  $57 million commitment from an advertising agency with an $8 million advance.

47.     Kozack became a critical and irreplaceable part of the AMG executive team. Because he was under a long-term, exclusive contract, Kozack was included in strategic AMG initiatives and planning meetings where he received confidential company information.

48.     There is no readily available replacement for Kozack, and AMG invested substantial time, resources, and capital in recruiting, onboarding, and integrating him into the company's leadership structure.

### C.     Univision's Knowing, Deliberate, And Unlawful Interference

49.     On April 6, 2026, three months into his multi-year employment term, Kozack telephoned Allen and informed him that he intended to resign "effective immediately."  Kozack provided no advance notice.  He told Allen that he had already accepted and signed an offer to re-join Univision and was starting immediately.

50.     Davis on behalf of Univision investor ForgeLight, Zinterhofer on behalf of Univision investor Searchlight, and Alegre on behalf of Univision, were all directly and personally involved in the effort to solicit Kozack, to poach him away from AMG, and to induce him to breach the Agreement with Plaintiff.

51.     Univision, by and through Alegre, ForgeLight by and through Davis, and Searchlight by and through Zinterhofer, knew that Kozack was under contract with Plaintiff for a fixed term.  Kozack admitted to Allen that Univision called him and offered significantly more than his contracted salary to induce Kozack to breach his current contract, leave Plaintiff and join Univision.  With full knowledge of the Agreement, of its fixed term and of Kozack's unique value to AMG, Defendants induced Kozack to leave years before the expiration of the term.

809609.2                                         11

52.     Alegre compounded Univision's interference by distributing a written announcement claiming that Kozack had accepted a position at Univision and would begin his employment immediately, before Plaintiff had any opportunity to seek judicial intervention. This announcement was designed to make it more difficult for Plaintiff to enforce its contractual rights.

53.     Univision's conduct is particularly harmful because of the timing.  The media advertising industry operates on a well-known annual cycle in which the Advertising Upfronts— the annual spring marketplace where TV networks and streaming platforms sell their commercial time for the upcoming television season to advertisers—represent the single most important revenue-generating event of the year.

54.     Kozack was leading AMG's Upfront sales strategy and execution.  By luring Kozack away when it did, Univision inflicted maximum harm on AMG while gaining an unfair competitive advantage for itself by wrongfully installing Kozack to now lead Univision's Upfront sales.  Univision should not be able to benefit from its brazen interference with Plaintiff's Agreement with Kozack.

55.     Both AMG and Univision compete for advertising revenue in the competitive media advertising market.  Both compete for the same executive talent, including Kozack himself. Univision's interference was not merely an effort to hire a talented executive:  It was an act of competitive sabotage that irreparably harmed a rival at the most consequential time of the year.

56.     Plaintiff has suffered, and continues to suffer, direct, immediate and irreparable harm as a result of Univision's unlawful interference.  Money damages are not an adequate remedy.

57.     On April 11, 2026, through counsel, Plaintiff demanded that Univision cease and desist from hiring Kozack and from otherwise inducing his breach of the Agreement.  Univision

refused to comply with that demand.  At bottom, Univision should not be enriched from its wrongdoing and should be enjoined from employing Kozack.

## CLAIM FOR RELIEF - TORTIOUS INTERFERENCE WITH CONTRACT

### *(Against All Defendants)*

58.    Plaintiff realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

59.    A valid, enforceable contract existed between Plaintiff and Kozack, providing for a fixed two-year term plus five (5) additional one-year terms, for a total term of seven (7) years employment from January 5, 2026 through January 4, 2033.

60.    Defendants had actual knowledge of the Agreement and its material terms, including the fixed multi-year term.  In fact, they were given the Agreement before they interfered with it.

61.    Defendants intentionally and improperly interfered with the Agreement by inducing Kozack to breach the Agreement, abandon his employment with Plaintiff, and take a new position with Univision during the term of the Agreement.

62.    Defendants' conduct was a direct and proximate cause of the harm suffered by Plaintiff as their conduct directly caused Kozack to breach the Agreement.

63.    As a direct and proximate result of Univision's tortious interference, Plaintiff has suffered and continues to suffer harm, including but not limited to the loss of Kozack's unique and irreplaceable services, lost advertising revenue and business opportunities during the critical upfront season, costs of recruitment and replacement, and damage to Plaintiff's competitive position, in an amount in excess of the jurisdictional requirement and which will be proven at trial.

64. Damages are inadequate, however, and as a result Plaintiff is entitled to preliminary and permanent injunctive relief. Plaintiff intends to seek expedited discovery in furtherance of a preliminary injunction.

65. Univision's conduct was willful, malicious, and oppressive, warranting an award of punitive damages in an amount sufficient to punish Univision and deter similar conduct in the future.

66. Defendants Zinterhofer, Alegre and Davis are also liable for wrongful interference and, in the alternative, for aiding and abetting the tortious interference of Univision.

67. Defendant Davis acting on behalf of ForgeLight, Defendant Alegre acting on behalf of Univision, and Defendant Zinterhofer acting on behalf of Searchlight, had actual knowledge of Univision's tortious interference with the Agreement and intentionally provided material and substantial assistance.

68. Davis, Alegre and Zinterhofer provided substantial assistance and encouragement to Univision in the commission of this tort. Davis, Alegre and Zinterhofer were personally involved in soliciting and recruiting Kozack, negotiating with Kozack, and inducing Kozack to breach the Agreement, end his employment with Plaintiff, and return to Univision.

69. Alegre further aided and abetted Univision's interference by announcing that Kozack had accepted a position at Univision and would begin immediately, thereby compounding Univision's unlawful conduct and making it more difficult, if not impossible, for Plaintiff to enforce its rights.

70. As a direct and proximate result of Davis, Alegre, and Zinterhofer's wrongdoing, Plaintiff has suffered and continues to suffer irreparable harm and damage.

71. The conduct of Davis, Alegre, and Zinterhofer was willful, malicious, and

809609.2                                              14

oppressive, warranting an award of punitive damages in an amount sufficient to punish them and deter similar conduct in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court award the following relief:

1. For injunctive relief, including a preliminary injunction and permanent injunction, prohibiting Defendants, and all those acting in concert with them, from soliciting Kozack to breach his fixed-term Agreement;

2. For injunctive relief, including a preliminary injunction and permanent injunction, prohibiting Defendants, and all those acting in concert with them, from employing Kozack as a result of their prior illegal conduct;

3. For expedited discovery in support of Plaintiff's request for preliminary injunctive relief;

4. For compensatory, general and special damages, which are in excess of the jurisdictional limit, according to proof at trial;

5. For punitive damages;

6. For attorneys' fees, costs and interest; and

7. For such other and further relief as the court deems just and proper.

DATED: May 11, 2026            MILLER BARONDESS, LLP

By: _____

     Jeffery B. White
     SDNY Bar Code JW2004
     Louis R. Miller
     (*pro hac vice* applications to be submitted)
     David W. Schecter
     (*pro hac vice* applications to be submitted)
     2121 Avenue of the Stars, Suite 2600
     Los Angeles, California 90067
     Tel:      (310) 552-4400
     Fax:     (310) 552-8400
     Email:   jwhite@millerbarondess.com;
              smiller@millerbarondess.com;
              dschecter@millerbarondess.com

     -and-

DAVIDOFF HUTCHER & CITRON LLP

     Peter Ripin
     605 Third Avenue
     New York, NY 10158
     Tel:      (212) 557-7200
     Fax:     (212) 286-1884
     Email:   pmr@dhclegal.com

Attorneys for Plaintiff
CF ENTERTAINMENT, INC.

809609.2                  16

## JURY DEMAND

Plaintiff CF Entertainment, Inc. hereby demands a trial by jury.

DATED: May 11, 2026

MILLER BARONDESS, LLP

By: _____

Jeffery B. White
SDNY Bar Code JW2004
Louis R. Miller
(*pro hac vice* applications to be submitted)
David W. Schecter
(*pro hac vice* applications to be submitted)
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Tel:      (310) 552-4400
Fax:      (310) 552-8400
Email:    jwhite@millerbarondess.com;
          smiller@millerbarondess.com;
          dschecter@millerbarondess.com

-and-

DAVIDOFF HUTCHER & CITRON LLP

Peter Ripin
605 Third Avenue
New York, NY 10158
Tel:      (212) 557-7200
Fax:      (212) 286-1884
Email:    pmr@dhclegal.com

Attorneys for Plaintiff
CF ENTERTAINMENT, INC.